

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**


**Dated: May 05, 2021.**

_____
**TONY M. DAVIS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 19-11101-tmd |
| | § | |
| LEANN MARIE HILTON, | § | |
| | § | |
| DEBTOR | § | CHAPTER 7 |

| | | |
|---|---|---|
| SAMANTHA HALE, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | ADVERSARY NO.  19-01081-tmd |
| | § | |
| LEANN MARIE HILTON, | § | |
| *Defendant* | § | |

### OPINION

This adversary proceeding arises from a dispute between two ex-business partners,

Plaintiff Samantha Hale and Defendant-Debtor LeAnn Hilton. [ECF 114, pg. 2]. In 2018, the

parties entered into a settlement agreement to separate their business dealings which ultimately

devolved into litigation in state court, with allegations of non-compliance with the settlement on

both sides. [ECF 128, pg. 2; ECF 114, pg. 2]. Based on the failed settlement and the litigation,

Hale alleges that Hilton owes her over $54,000 in damages, attorneys' fees, and sanctions. [ECF

129, pg. 1]. While the state court suit was still pending, Hilton filed for bankruptcy. [ECF 129,

pg. 2].

Hale instituted this adversary proceeding, alleging multiple grounds for

nondischargeability. [ECF 114]. Following the trial, the Court explained on the record that Hale

failed to carry her burden on claims under sections 523(a)(2)(A) and 523(a)(6). Furthermore, the

Court found that because Hilton was advised by two lawyers and an accountant, and because

"income" is a difficult term, the varying figures she disclosed for income on her schedules do not

establish a claim under section 727(a)(4). Therefore, the only claims taken under advisement and

then set for closing argument were those under sections 727(a)(2)(A) and 727(a)(3).

**727(a)(2)(A)**

Under Section 727(a)(2)(A), the Court may deny discharge when a plaintiff proves there

was "(1) a transfer of property; (2) belonging to the debtor; (3) within one year of the filing of

the petition; (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." *Cadle*

*Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 698 (5th Cir. 2009).  Proof of actual intent is

required and can be inferred from circumstantial evidence. *In re Duncan*, 562 F.3d at 698. The

Fifth Circuit uses a multi-factor test to evaluate evidence of actual intent to defraud:

(1) The lack or inadequacy of consideration;
(2) The family, friendship, or close associate relationship between the parties;
(3) The retention of possession, benefit, or use of the property in question;
(4) The financial condition of the party sought to be charged both before and after the transaction in question;
(5) The existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6) The general chronology of the events and transactions under inquiry.

*In re Duncan*, 562 F.3d at 698.

At the trial and at closing argument, Hale focused on evidence that Hilton withdrew tens of thousands of dollars in cash and paid personal expenses from her business account both before and after bankruptcy. Hilton argued that the Court should not consider the activity in the business account because the account belongs to Hilton Management Group, Hilton's wholly-owned business, which is a separate legal entity. However, the Court finds that because Hilton did not observe the formal division between herself and her company, as evidenced by personal expenses drawn from the account, she is not entitled to the benefits of that division and analysis of her business account is proper. Indeed, while both parties described the account as a business account, little evidence was brought to the Court's attention of any business activities taking place in the account, and there is overwhelming evidence that Hilton treated it just like her personal account.

Hale has shown that at least $35,000.00 was withdrawn in cash from Hilton's business account in the eight months before bankruptcy, leaving only Hilton's intent at issue. [ECF 140, pg. 6]. However, neither party presented sufficient evidence to support a finding about Hilton's intent and there is insufficient evidence in the record to adequately apply the factors listed above. (Though the lack of records is one reason the evidence was insufficient).

For this reason, the Court finds that Hale has failed to carry her burden on her claim under section 727(a)(2)(A).

**727(a)(3)**

"Under this section, the creditor objecting to the debtor's discharge bears the initial burden of production to present evidence that the debtor failed to keep adequate records and that the failure prevented the creditor from evaluating the debtor's financial condition." *In re Duncan*, 583 F.3d at 697 (internal citations omitted). "If the plaintiff satisfies this initial burden of production - that the debtor's failure to produce adequate records makes it impossible to discern his financial status - the debtor must prove the inadequacy is 'justified under all the circumstances.'" *Id*. (*quoting In re Dennis,* 330 F.3d 696, 703 (5th Cir. 2003).

As described above, over $35,000 in cash was withdrawn from Hilton's business account in the eight months prior to bankruptcy, and a shocking $33,0000 in cash was withdrawn from that account in the six weeks following the bankruptcy filing. At trial Hilton attempted to explain or dispute many of the alleged personal expenses drawn from the business account but could not provide documentation or receipts. Moreover, she provided very little explanation or documentation about the thousands of dollars of cash withdrawals. In some instances, Hilton could have obtained supporting documents and did not. For example, Hilton testified about payments to Ashley Callahan, an attorney, but provided no documents to support her testimony. In his deposition, Ashley Callahan testified that Hilton never requested receipts or invoices from him. [ECF 136, pg. 4].  The cash might have been spent on innocuous and needed expenses (the amounts suggest otherwise). On the other hand, the cash may be residing in an as-yet undisclosed account. We have nothing that can tell us which is true. Ultimately, Hilton's testimony was abrasive, evasive, often non-responsive, and argumentative, making it wholly inadequate to bridge the gap left by the lack of documentation.

Based on the evidence and testimony at trial, the Court concludes that Hilton's failure to keep adequate records prevented her creditors, namely Hale, from evaluating her financial condition. While justification is a 'sliding scale' based on sophistication, and Hilton was in some ways lacking in sophistication, Hilton's failures were ultimately a product of obstinate noncompliance during discovery and in her testimony at trial. Therefore, the inadequate records are not justified under the circumstances.

The Court will enter a final judgment in accordance with this ruling.

#  #  #